UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EMILIO GUILBERT,

                Plaintiff,

v.                                                **DECISION AND ORDER**
                                                          05-CV-153S

JAMES SENNETT, C.O. and DARRYL
BORAWSKI, Sgt.,

                Defendants.

## I. INTRODUCTION

Plaintiff, an inmate proceeding *pro se*, commenced this action pursuant to Title 42 U.S.C. § 1983, alleging that Defendants violated his Eighth and Fourteenth Amendment rights under the United States Constitution. Following dismissal of Plaintiff's Fourteenth Amendment claim, Defendants moved for Summary Judgment on Plaintiff's Eighth Amendment claim.

Presently before this Court is Defendants' Motion for Summary Judgment. For the reasons discussed below, Defendants' Motion is granted.

## II. BACKGROUND

*A. Facts*

On September 22, 2003, Defendant James M. Sennett, an Attica Correctional Facility Correction Officer, filed an inmate misbehavior report against Plaintiff Emilio

1

Guilbert, an inmate, who was then housed at the Attica Correctional Facility.[1] The misbehavior report charged Plaintiff with failing to turn in his eating utensils following his breakfast meal. (Defs.' Statement, ¶ 14.[2]) Plaintiff denied the allegation, and claimed that Sennett, who was collecting trays that morning, dropped a number of trays while collecting them, and then confused Plaintiff's tray, which contained all utensils, with the tray of the inmate located in the cell next to Plaintiff, which did not. (Docket No. 51-2, Pl.'s Dep., 6:11-16; 7:19.) As a result of the charge, Plaintiff was placed on a five day "pre-hearing restricted diet." (Defs.' Statement, ¶ 13; Docket No. 16, p. 3.)

Later that same day, Plaintiff was charged with destruction of state property, flooding his cell, and violation of a direct order. (Defs.' Statement, ¶ 21.) A second misbehavior report was filed against Plaintiff, and Plaintiff was placed in a strip cell for a period of 48 hours. (Docket No. 8, Pl.'s Amend. Compl., ¶ 16.) Plaintiff did not deny the allegations in the second report, but stated that he "became agitated and psychotic due to being falsely accused of not turning in his utensils." (Pl.'s Amend. Compl., ¶ 16.)

Plaintiff underwent two separate hearings addressing the conduct alleged in the two misbehavior reports. (Defs.' Statement, ¶ 18.) The first hearing took place on October 3, 2003, and addressed Plaintiff's alleged failure to return his utensils. (Pl.'s Amend. Compl., ¶ 33.) Plaintiff was completely exonerated from any wrongdoing after the hearing officer reviewed video footage from the morning of the incident, and discovered that Plaintiff did

---

[1] Plaintiff alleges that Sergeant Darryl Borawski, authorized Sennett to issue a misbehavior report. (Amend. Compl., ¶ 12.)

[2] Referring to Defendants' Local Rule 56.1 Statement of Material Facts Not In Dispute, which contains citations to the record evidence. (Docket No. 50.)

in fact return his utensils. (Defs.' Statement, ¶ 18; Pl.'s Amend. Compl., ¶¶ 33-34.)

On October 7, 2003, Plaintiff underwent a hearing for the conduct charged in the second misbehavior report. At this hearing, it came to the attention of James Kennedy, the hearing officer, that Plaintiff has a history of mental illness. (Defs.' Statement, ¶ 26.) Kennedy did not know the specifics of Plaintiff's mental illness, so he adjourned the hearing and met with Dr. Gungla and Mr. Clair, both from the prison's Mental Health Unit. (Docket No. 53, Bates No. 104.) Dr. Gungla informed Kennedy that Plaintiff has been diagnosed with major depression, but that Plaintiff could distinguish right from wrong. (Defs.' Statement, ¶ 26.) Consequently, Kennedy found Plaintiff guilty of the conduct charged in the second misbehavior report, and Plaintiff was sentenced to two months in the Special Housing Unit ("SHU"). (Defs.' Statement, ¶¶ 19 & 29.) But prior to the date on which Plaintiff was supposed to begin serving his SHU sentence, Donald Selsky, Director of the Special Housing Unit, Inmate Discipline, reversed the sentence. (Defs.' Statement, ¶ 29.)

### B. Procedural History

Based on these facts, Plaintiff commenced this action *pro se* by filing a Complaint in the United States District Court for the Western District of New York on March 8, 2005, naming as Defendants James Sennet, Randy James, James Conway, James Kennedy, and Darryl Borawski, all of whom are employees of the Department of Correctional Services. The Complaint alleges that Defendants violated his Eighth and Fourteenth Amendment rights by knowingly filing a false accusation against Plaintiff and placing him on a restricted diet which, in conjunction with his pre-existing mental condition, caused him to suffer a mental breakdown. (See generally, Pl.'s Amend. Compl; Docket No. 16, p. 6.)

3

On August 9, 2005, the Honorable Richard J. Arcara, Chief United States District Judge for the Western District of New York, found, *sua sponte*, that Plaintiff's Eighth and Fourteenth Amendment claims were subject to dismissal, but granted Plaintiff leave to amend his Complaint. (Docket No. 7.) Thereafter, Plaintiff filed an Amended Complaint, and on October 25, 2005, the Honorable John T. Elfvin, United States District Judge, dismissed the Amended Complaint in its entirety *sua sponte*. (Docket No. 10.) Regarding Plaintiff's Eighth Amendment claim, Judge Elfvin held that Plaintiff failed to allege that Defendants "acted maliciously and sadistically to cause harm," and therefore failed to satisfy the "subjective prong" of an Eighth Amendment claim. (Docket No. 10, p. 1.)

Plaintiff timely appealed to the United States Court of Appeals for the Second Circuit. The Second Circuit affirmed Judge Elfvin's decision as to Plaintiff's Fourteenth Amendment claim, and affirmed Judge Elvin's decision to terminate Defendants James, Conway and Kennedy from the case. But the Second Circuit vacated and remanded Judge Elfvin's decision regarding Plaintiff's Eighth Amendment claim against Sennett and Borawski after finding that Judge Elfvin committed two errors. (Docket No. 16.) First, the Court held that Judge Elfvin "applied too stringent a standard . . . improperly requiring [Plaintiff] to allege that Defendants' actions were malicious and sadistic, rather than conducted with deliberate indifference for his health or safety." (Id., p. 6) (internal citations omitted). Second, the Court held that Judge Elfvin subjected Plaintiff to a higher pleading standard than is required by Rule 8 of the Federal Rules of Civil Procedure, and that dismissal was inappropriate because "it d[id] not appear beyond a doubt that [Plaintiff] c[ould] prove no set of facts in support of his Eighth Amendment claim." (Id.)

The case was reassigned to this Court on October 17, 2007, after Judge Elfvin

4

elected to take inactive status.  (Docket No. 18.)

## C. *Defendants' Motion for Summary Judgment*

On January 27, 2009, Defendants moved for summary judgment on Plaintiff's Eighth Amendment claim.  (Docket No. 49.[3])  Defendants argue that (1) there are no genuine issues of material fact, and based upon the undisputed facts, they are entitled to judgment as a matter of law, and (2) they are qualifiedly immune from suit.  (Docket No. 49-2.)  This Court directed Plaintiff to file a response to Defendants' Motion by March 4, 2009.  (Docket No. 55.)  Plaintiff failed to do so.

On March 30, 2009, this Court issued a second Scheduling Order, directing Plaintiff to respond to Defendants' Motion by April 10, 2009.  (Docket No. 60.)  The Order also warned Plaintiff that his failure to respond as directed could result in the motion being granted as unopposed.  (Id.)  Again, Plaintiff did not file a response.

On April 14, 2009, this Court issued a third Scheduling Order, directing Plaintiff to file a response to the motion by April 27, 2009.  (Docket No. 61.)  The Order warned Plaintiff that the failure to respond to Defendants' Motion by April 27, 2009, "will result in the motion being granted as unopposed."  (Id.)  Plaintiff failed, for a third time, to file a response.[4]

But on April 28, 2009, Plaintiff moved for an extension of time to respond.  (Docket No. 63.)  This Court granted the extension, and directed Plaintiff to file his response by

---

[3] With their Motion for Summary Judgment, Defendants also filed a Memorandum in Support (Docket No. 49-1), a Statement of Undisputed Facts (Docket No. 50), and Declarations of David J. State (Docket No. 51), Darryl Borawski (Docket No. 52), and James Sennett. (Docket No. 53.)

[4] The docket reflects that the Scheduling Orders dated March 30, 2009, and April 14, 2009, were sent to the incorrect address.  On April 16, 2009, the Clerk's Office mailed a copy of these Scheduling Orders to the correct address.

5

June 30, 2009. (Docket No. 65.) In the Order, this Court also noted that Plaintiff's failure to submit a response by June 30, 2009, will result in Defendants' Motion being deemed submitted as unopposed. (Id.) This Court also stated that no further extensions of time will be granted.

Plaintiff did not submit his response by June 30, 2009, and to date, has not done so. Consequently, this Court takes Defendants' Motion for Summary Judgement under advisement as unopposed.

### III.  DISCUSSION

**A.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

"[T]he failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the

moving party has fulfilled its burden of demonstrating . . . its entitlement to judgment as a matter of law." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). In determining whether Defendants meet their burden, this Court has considered Defendants' Local Rule 56.1 statement which Plaintiff has not controverted, despite numerous opportunities to do so. This Court accepts Defendants' statement of material facts not in dispute to the extent they are not contradicted by other evidence in the record.

**B.      Eighth Amendment Standard**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Conditions of confinement can violate the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To violate the Eighth Amendment by alleging cruel and unusual conditions of confinement, "a prisoner must prove both an objective element – that the condition was 'sufficiently serious' – and a subjective element – that the defendant acted, or failed to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health of safety.'" Slacks v. Grenier, No. 02-CV-7668, 2003 WL 22232942, at *2 (S.D.N.Y. Sep. 29, 2003) (citing Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002)). To satisfy the subjective element, a plaintiff must establish that "the official knows of and disregards an excessive risk to inmate health or safety." Phelps, 308 F.3d at 185-86.

**C.      Analysis**

Defendants have fulfilled their burden in demonstrating they are entitled to summary judgment as a matter of law. First, Plaintiff has not alleged a sufficiently serious violation

of his Eighth Amendment rights as neither the filing of a false misbehavior report nor the imposition of a restricted diet constitute an objective violation.[5] See e.g., Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986) ("The filing of unfounded charges does not give rise to a *per se* constitutional violation actionable under section 1983"); Blaylock v. Borden, 547 F.Supp. 2d 305, (S.D.N.Y. 2008) (citing Freeman, 808 F.2d at 953) ("If there is no claim of . . . a constitutionally flawed disciplinary hearing, an 'inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'"); see also e.g., McEachin v. McGuinnis, 357 F.3d 197, 199-201 (2d Cir. 2004) (Eighth Amendment claim properly dismissed where inmate alleged placement on restricted diet for seven days); George v. Goord, No. 05-CV-788, 2009 WL 1448986, at *17 (W.D.N.Y. May 21, 2009) (no Eighth Amendment violation where plaintiff was placed on a restricted diet for three days); H'Shaka v. Drown, No. 9:03-CV-937, 2007 WL 1017275, at *8 (N.D.N.Y. Mar. 30, 2007) (granting defendants' motion for summary judgment on plaintiff's Eighth Amendment claim for seven days on restricted diet); James v. Coughlin, 13 F. Supp. 2d 403, 412 (W.D.N.Y. 1998) (no Eighth Amendment violation where plaintiff was placed on a pre-hearing restricted diet for three days); Breazil v. Bartlett, 998 F. Supp. 236, 240-242 (W.D.N.Y. 1997) (no Eighth Amendment violation where inmate was placed on pre-hearing restricted diet consisting of "Nutriloaf" and one cup of raw cabbage for one week [i.e., from 6/27-7/4], and a post-hearing restricted diet consisting of Nutriloaf and cabbage for 45 days).

  Nevertheless, assuming for the sake of argument that filing a false misbehavior

---

[5] This portion of Judge Elfvin's decision – i.e., finding that Plaintiff did not allege a sufficiently serious or harmful deprivation – was not vacated by the Second Circuit. (See Docket Nos. 10 & 16.)

report, or imposing a restricted diet, constitutes a sufficiently serious transgression, there is still no Eighth Amendment violation here because Defendants have not acted with a sufficiently culpable state of mind with regard to that transgression. The undisputed facts demonstrate that: (1) Defendants did not intentionally file a false misbehavior report; (2) Defendants were unaware of Plaintiff's mental condition; and (3) even if Defendants were aware of Plaintiff's mental condition, they still did not act with the requisite culpability.

First, the undisputed facts show that the misbehavior report was the product of Sennett's mistake and confusion, not an intentional falsification. For example, at his hearing on October 7, 2003, Plaintiff stated that Sennett simply "confused" his tray, which had all of the utensils, with his neighbor's tray. (Defs.' Statement, ¶ 19.) And at his deposition, Plaintiff reiterated that, in his opinion, Sennett simply made a mistake, and was not retaliating against him in any way. (Docket No. 51, Ex. A, p. 35:21-22.) ("No, I don't think he tried to retaliate. I think what he did, he made a mistake.") Plaintiff described the incident in detail, remarking:

> When I was in my cell sleeping at that time when the officer was doing the feed and he came around collecting the trash. So when he collected my tray, he confused my tray with my neighbor. 'Cause he dropped the tray on the floor and that confused him with my cell and that afternoon he put me on the loaf.

(Docket No. 51, Ex. A, p. 6:11-16.)

The undisputed facts also demonstrate that Defendants were unaware of Plaintiff's mental condition. Defendants could not have been deliberately indifferent towards a condition that they did not even know existed. For instance, Borawski stated:

> I do not know what physical or mental health conditions Mr. Guilbert had or has and I would not have possessed this type of information about Mr. Guilbert or any other inmate. During my 25 years as an employee of DOCS,

9

> I have never been briefed or provided any of this type of information about an inmates mental or physical health and it is my understanding that privacy laws and DOCS regulations do not permit this.

Borawski Declaration, ¶ 6.

Similarly, Sennett stated:

> I do not know what physical or mental health conditions Mr. Guilbert has and I did not have any of this type of information before during or after my initiation of the misbehavior report in September of 2003. During my years as an employee of DOCS, I was never briefed or provided any of this type of information about any inmates mental health and it is my understanding that privacy laws do not permit this.

Sennett Declaration, ¶ 6.

Although Plaintiff attached records to his Amended Complaint, showing that prison officials delivered medication to him on a daily basis, there is nothing to suggest that the prison guards knew the specific nature of Plaintiff's ailment. And in light of Defendants' declarations stating their lack of knowledge, combined with Plaintiff's failure to dispute these assertions, this Court finds no reason to hold otherwise.

Lastly, even if Plaintiff could somehow demonstrate that Defendants knew about his mental condition, there is no evidence to suggest that Defendants had reason to believe the first misbehavior report and/or the restricted diet would trigger the reaction for which he was later written up, much less that they acted with deliberate indifference to that possibility. Thus, the record does not support a finding that there is a genuine issue of material fact that Defendants were both aware of, and disregarded, an excessive and serious risk to Plaintiff's health.

. . .

Based upon these undisputed facts, this Court finds that Defendants have fulfilled

their burden in demonstrating that they are entitled to summary judgment. Having found no constitutional violation, this Court need not reach the issue of whether Defendants are entitled to qualified immunity.

## IV.  CONCLUSION

For the foregoing reasons, this Court finds that Defendants are entitled to summary judgment on the grounds that they did not violate Plaintiff's Eighth Amendment rights.

## V.  ORDERS

IT IS HEREBY ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 49) is GRANTED, and the Amended Complaint is dismissed with prejudice.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   July 30, 2009
           Buffalo, New York

                                                                   /s/William M. Skretny
                                                                  WILLIAM M. SKRETNY
                                                                  United States District Judge